IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

COREY A. HOWELL,                    )
    Plaintiff,                          )
                              )
        v.                                  )              Civil Action No.  3:16cv649 (MHL)
                              )
ADAM M. Moore, *et al.*,              )
    Defendants.                         )
_____ )

## REPORT AND RECOMMENDATION

Corey A. Howell ("Plaintiff") brings this action against Adam M. Moore, Russell M. Granderson, Gary T. Bailey, Sean D. Retter, Matthew R. Dunn, and Police Officer John Doe (collectively "Defendant Officers"), Chesterfield County Police Department Chief of Police Col. Thierry G. Dupuis ("Col. Dupuis"), and Chesterfield County, Virginia ("the County") (all collectively "Defendants"), asserting multiple constitutional claims and one common law claim. This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Defendants' Motion to Dismiss (ECF No. 5). (Order, ECF Nos. 9, 10.) The motion has been fully briefed, and the Court heard oral argument on August 22, 2017. The matter is accordingly ripe for review. Having considered the parties' briefs and oral argument, and for the reasons set forth below, the Court RECOMMENDS that Defendants' Motion to Dismiss (ECF No. 5) be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all facts and draws all reasonable inferences in the light most favorable to him. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d

1130, 1134 (4th Cir. 1993)). The Court's analysis at this stage is informed and constrained by the four corners of the Complaint. Applying these standards, the facts are construed as follows for purposes of resolving the Motion to Dismiss.

## A. Summary of Allegations in the Complaint

Plaintiff is an African American male; he was twenty-one years old when the events giving rise to this action occurred. (Am. Compl. ¶ 11.) On August 2, 2014, Plaintiff was driving down Jefferson Davis Highway at approximately 11:30 p.m. when he began to feel drowsy. (*Id.* at ¶ 12.) Wanting to rest rather than proceed down the road, Plaintiff parked his car in the lot of an Advanced Auto Parts store off of Jefferson Davis Highway in Chester, Virginia. (*Id.*) Sometime after Plaintiff began to rest in his car, a Chesterfield County police cruiser pulled into the lot behind Plaintiff's car, blocked Plaintiff in, and activated its emergency lights. (*Id.* at ¶ 14.) Defendant Officer Moore, a Chesterfield County police officer, approached the front driver's side door of Plaintiff's car and asked for Plaintiff's ID, which Plaintiff provided. (*Id.* at ¶¶ 15–16.) Officer Moore subsequently asked if he could search Plaintiff's car, and Plaintiff gave his permission "since he had nothing to hide." (*Id.* at ¶ 16.) Officer Moore proceeded to search Plaintiff's car. (*Id.* at ¶ 17.)

Around this time, five more Chesterfield County police officers arrived on the scene. (*Id.*) All of these officers were Caucasian, as was Officer Moore. (*Id.*) After the initial search of Plaintiff's vehicle turned up nothing, some of the Defendant Officers decided to re-search the vehicle. (*Id.* at ¶ 18.) The Defendant Officers "demanded that Plaintiff take a seat on the ground and they proceeded to interrogate him." (*Id.*) Approximately ten minutes after searching Plaintiff's car, "an abrasive and very physically imposing officer" announced that the Defendant Officers had found a powdery white substance in Plaintiff's car and asserted that this substance was an illegal drug. (*Id.* at ¶ 19.) Plaintiff denied the existence of any such substance in the

vehicle and stated that the Defendant Officers must be mistaken. (*Id.* at ¶ 20.) The Defendant Officer(s) then told Plaintiff "something to the effect [of] 'You can do this the easy way and tell us whether it's meth or coke, or we can just run it through the lab.'" (*Id.*) Plaintiff again asserted that the Defendant Officers must be mistaken. (*Id.*)

The Defendant Officers then proceeded to search Plaintiff's vehicle a third time. (*Id.* ¶ 21.) Following this search, the Officers said they discovered two prescription pills, one being Dilaudid and one being Percocet. (*Id.* at ¶ 22.) Plaintiff told the Defendant Officers that he had been prescribed these medications and requested that he be allowed to contact his pharmacy so that the Defendant Officers could confirm this information. (*Id.* at ¶ 23.) Plaintiff provided the name and location of his CVS pharmacy, which was open twenty-four hours a day. (*Id.*) The Officers did not contact the pharmacy or permit Plaintiff to do so; instead, they arrested Plaintiff, "ma[king] him lay face down on the pavement, handcuff[ing] his hands behind his back, [and] plac[ing] him in the back seat of a police vehicle" before taking him to jail. (*Id.* at ¶ 24.) Approximately one hour elapsed from the time Officer Moore first approached Plaintiff to the time the Defendant Officers arrested him. (*Id.*)

At the jail, Plaintiff appeared before a magistrate who told him that he would be released on his own recognizance. (*Id.* ¶ 25.) After spending approximately five hours at the jail, Plaintiff was released. (*Id.*) On August 4, 2014, Plaintiff was charged with two Class 5 felonies for possession of a controlled substance. (*Id.* ¶ 26.) However, on January 7, 2015, the Commonwealth attorney assigned to Plaintiff's case entered a *nolle prosequi* for both charges. (*Id.* ¶ 27.)

As a result of these events, Plaintiff filed the immediate five-count action. Counts One through Three assert violations of 42 U.S.C. § 1983 ("§ 1983") against all Defendants for: (1) violation of Plaintiff's Fourth Amendment rights; (2) conspiracy to violate Plaintiff's Fourth

Amendment rights; and (3) malicious prosecution. In Count Four, Plaintiff asserts claims against Defendants Chesterfield County and Col. Dupuis based on § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Finally, Count Five asserts a common law malicious prosecution claim against all Defendants.

## B. Procedural History

Plaintiff filed a Complaint in this Court on August 2, 2016 (ECF No. 1); the case was assigned to United States District Judge M. Hannah Lauck. On October 7, 2016, Plaintiff filed an Amended Complaint (ECF No. 2), and on November 4, 2016, Defendants filed the instant Motion to Dismiss (ECF No. 5). Plaintiff filed a Brief in Opposition to the Motion to Dismiss on November 18, 2016 (ECF No. 7), and Defendants filed their Reply (ECF No. 8) on November 28, 2016.

On April 18, 2017, Judge Lauck issued an Order referring Defendants' Motion to Dismiss to the undersigned for Report and Recommendation (ECF No. 9), and on June 9, 2017, Judge Lauck issued a second referral order Order clarifying the first (ECF No. 10). On August 22, 2017, the Court heard oral argument on Defendants' Motion.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but it must contain "more than labels

4

and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face" rather than merely "conceivable." *Id.* at 570. In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When a defendant seeks dismissal of a civil rights complaint, a court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (emphasis omitted) (internal quotation marks omitted). Nevertheless, because plausibility is a higher standard than possibility, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

Defendants argue that the Defendant Officers are entitled to qualified immunity on Plaintiff's three § 1983 claims. They further argue that Plaintiff has failed to state a claim on those and all other counts. The Court will address each count of Plaintiff's Amended Complaint individually.

### A. Violation of Plaintiff's Fourth Amendment Rights – § 1983

In Count One of the Amended Complaint, Plaintiff alleges that the Defendants violated Plaintiff's Fourth Amendment rights by:

(i) exceeding the scope of Plaintiff's consent to search his vehicle; (ii) detaining Plaintiff for longer than necessary to verify his reason for taking a nap in a public parking lot; (iii) using excessive force in interrogating Plaintiff for close to an hour, surrounding Plaintiff with six [Defendant] Officers (all of whom were Caucasian), creating false allegations of drug possession, forcing Plaintiff to lie face-down on the asphalt, handcuffing his hands behind his back and taking him off to jail; and (iv) arresting Plaintiff without probable cause, or even reason to believe there was probable cause, especially in light of the fact that Plaintiff made the Defendants aware of readily exculpatory evidence.

(Am. Compl. ¶ 30.)

Defendants contend that Plaintiff fails to state a claim for violation of any of Plaintiff's Fourth Amendment rights. Defendants further argue that, even if Plaintiff did state a claim, the Defendant Officers are shielded by the doctrine of qualified immunity. The qualified immunity analysis subsumes the question of whether a plaintiff has stated a claim for a constitutional violation, and so the Court can analyze both arguments at once.

As an initial matter, the Court notes that Count One must be dismissed to the extent that Plaintiff is alleging that all Defendants—including Col. Dupuis and the County—violated his Fourth Amendment rights. "[P]rinciples of *respondeat superior* have no application to § 1983 actions." *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 Fed. Appx. 279, 282 (4th Cir. 2009) (unpublished opinion) (citing *Monell*, 436 U.S. at 691–94). Because the Defendant Officers were the only Defendants individually involved in the alleged actions underpinning Count One, the Court shall conduct its analysis of Count One with only the Defendant Officers in mind.

*1. The Doctrine of Qualified Immunity*

"Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

6

*Washington v. Wilmore*, 407 F.3d 274, 281 (4th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[A] defendant can raise the qualified-immunity defense at both the motion to dismiss and summary judgment stage." *Tobey v. Jones*, 706 F.3d 379, 393–94 (4th Cir. 2013) (citing *Behrens v. Pelletier*, 516 U.S. 299 (1996)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Therefore, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). "To escape dismissal of a complaint on qualified immunity grounds, a plaintiff must (1) allege a violation of a [constitutional] right (2) that is clearly established at the time of the violation." *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012) (citing *Pearson*, 555 U.S. at 231).

### 2. Plaintiff Has Sufficiently Alleged a Constitutional Violation

Plaintiff alleges that the Defendant Officers violated his Fourth Amendment rights in four separate ways. Defendants, in turn, argue that Plaintiff has failed to state a claim on any of those four theories and additionally that Plaintiff has failed to allege how the actions or omissions of each individual Defendant Officer violated Plaintiff's constitutional rights. For the reasons stated below, the Court finds that Plaintiff has pled facts sufficient to state a claim for violation of his Fourth Amendment rights, and further that he has done so with regard to each Defendant Officer because he has put each Defendant Officer on notice of his claims and the grounds upon which those claims rest.

a. Unreasonable Search

Plaintiff first alleges that the Defendant Officers violated his Fourth Amendment rights by "exceeding the scope of Plaintiff's consent to search his vehicle." (Am. Compl. ¶ 30.)

7

Plaintiff primarily challenges the second and third searches of his vehicle, which were performed by the Defendant Officers after Officer Moore's initial search uncovered nothing. Plaintiff argues that these searches exceeded the scope of the consent he initially gave to Officer Moore because he did not give his consent to the after-arriving officers to re-search his vehicle and also because he did not feel free to revoke his initial consent once he was surrounded by six Caucasian police officers. (Br. Opp. 10–12.) Defendants simply argue that, because Plaintiff gave his consent for his vehicle to be searched and never subsequently withdrew that consent, the searches were all constitutionally permissible. (Mem. Supp. Mot. Dismiss 8.)

The law is clear that a police officer may seek a person's consent to perform a search of his vehicle and that, if such consent is freely and voluntarily given, a search performed within the scope of that consent is constitutionally permissible. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Moreover, as emphasized by Defendants, "any consent given is valid until it is withdrawn by the [suspect]." *United States v. Ortiz*, 669 F.3d 439, 445 (4th Cir. 2012) (citation omitted). Defendants further rely on the Fourth Circuit's language in *United States v. Lattimore* that "it would be wholly inappropriate for [the Court] to ignore the undisputed—and in light of his failure to withdraw consent, dispositive—fact that [Plaintiff] gave a valid and voluntary oral consent to search." 87 F.3d 647, 652 (4th Cir. 1996). However, the Court does not agree that Plaintiff's consent in this case is dispositive of the present issue, for two reasons. First, *Lattimore* only involved one disputed search, not repeated searches as are implicated in this case. Second, consent is only as good as its scope, and "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). The question for this Court, then, is: was it reasonable for Officer Moore and the other Defendant Officers to consider Plaintiff's

8

consent to a search of his car to include consent to two subsequent searches, after the initial search revealed nothing criminal? This Court thinks not.

After running Plaintiff's ID, as a result of which he "verified Plaintiff's identity and discovered that [Plaintiff] had no outstanding arrest warrants or any criminal record," Officer Moore "asked if he could search Plaintiff's car, to which Plaintiff did not object." (Am. Compl. ¶ 16.) Around this time, the other Defendant Officers arrived, some of whom may have joined Officer Moore in searching Plaintiff's car. (*Id.* ¶¶ 17–18.) This search yielded nothing, and the searching officer(s) indicated as much. (*Id.* ¶ 18.) Upon the termination of this search—the search to which Plaintiff had consented—Plaintiff's consent effectively terminated as well. Nevertheless, the Defendant Officers conducted two more complete searches of Plaintiff's vehicle. (*Id.* ¶¶ 18–22.) Only during the third and final search did the Defendant Officers discover any potential contraband for which they could and did arrest Plaintiff: two loose prescription pills, both of which qualified as controlled substances. (*Id.* ¶ 24.)

Although Plaintiff granted Officer Moore permission to search his car, and although he did not place any explicit limitations on the scope of that search, it is objectively reasonable to conclude that Plaintiff was not thereby consenting to wait in the Advanced Auto Parts parking lot for an unlimited duration as various police officers conducted an unlimited number of searches of his car. Rather, it is objectively reasonable to expect that, once the consented-to search has been fully conducted, if nothing incriminating is discovered, an individual will be permitted to continue on his way. Drawing all inferences in favor of Plaintiff, as the Court must at this stage, *see T.G. Slater*, 385 F.3d at 841, the Court finds that Plaintiff has sufficiently alleged facts that support a finding that the objectively reasonable scope of his consent only extended to the first search of his car and that the Defendant Officers did not have consent to conduct a second—let alone third—search after Plaintiff's ID-check and the first search uncovered nothing untoward.

Plaintiff has therefore stated a claim for an unreasonable search in violation of his Fourth Amendment rights.

b. Unreasonable Seizure

Plaintiff's second basis for Count One is the allegation that the Defendant Officers "detain[ed] Plaintiff for longer than necessary to verify his reason for taking a nap in a public parking lot," thereby transforming an initially lawful interaction into an unlawful seizure of Plaintiff's person. (Am. Compl. ¶ 30; Br. Opp. 13.) Defendants argue that Plaintiff was not unlawfully seized because, up until his actual arrest, the whole encounter was consensual: Plaintiff consented to the search of his vehicle, he never asked to leave, and he was never restrained until he was formally arrested for possession of two controlled substances. (Mem. Supp. Mot. Dismiss 9.)

"[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). The Supreme Court has recognized that, "[w]hen the actions of the police do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence, there needs to be some test for telling when a seizure occurs in response to authority, and when it does not." *Brendlin v. California*, 551 U.S. 249, 255 (2007). The test the Supreme Court has developed to measure the coercive effect of the encounter is to ask "whether 'a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.'" *Id.* (quoting *Bostick*, 501 U.S. at 435–36). The Supreme Court has further recognized "a societal expectation of unquestioned [police] command at odds with any notion that a [stopped vehicle's occupant] would feel free to leave, or to terminate the

personal encounter any other way, without advance permission." *Id.* (first alteration in original) (internal quotation omitted). When a person would not feel free to terminate the encounter, a seizure has occurred. Moreover, although a seizure may be lawful at its inception, it "can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution," for example "if it is prolonged beyond the time reasonably required to complete [the] mission" for which the encounter was initiated. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (citation omitted).

Plaintiff alleges that he was resting in his vehicle when he was approached by Officer Moore, who asked for Plaintiff's ID and subsequently asked to search Plaintiff's vehicle. (Am. Compl. ¶¶ 14–17.) Plaintiff consented to the search—not because he was intimidated by Officer Moore, but "since he had nothing to hide." (*Id.* at ¶ 16.) At this time, Plaintiff had not been seized within the meaning of the Fourth Amendment, because the encounter was consensual. *See Bostick*, 501 U.S. at 434. However, as discussed above, the scope of Plaintiff's consent only reasonably extended to the initial search of his vehicle. Upon the completion of this initial search of Plaintiff's car, then, the encounter lost its consensual nature, thereby "trigger[ing] Fourth Amendment scrutiny." *Id.* at 434.

By the time the initial search of Plaintiff's vehicle concluded, Plaintiff—an African American male—was surrounded by six Caucasian police officers. (Am. Compl. ¶¶ 17–18.) Plaintiff alleges that, after the Officers "indicated nothing was discovered" as a result of the initial search, "several more [of] the Officers decided to search the vehicle" because they did not find the first search sufficient. (*Id.* at ¶ 18.) The Defendant Officers also "demanded that Plaintiff take a seat on the ground and they proceeded to interrogate him." (*Id.*) Based on the facts alleged, read in the light most favorable to Plaintiff, a reasonable person in Plaintiff's position would not likely feel free to decline the Defendant Officers' demands or object to their

initiation of another search of his vehicle, or otherwise object to his general treatment. *See Brendlin*, 551 U.S. at 255 (discussing the "societal expectation of unquestioned [police] command"). Therefore, it is safe to say that at this time Plaintiff was seized within the meaning of the Fourth Amendment. Moreover, because the investigative purpose of the initial encounter had already been carried out—Officer Moore had run Plaintiff's ID and searched Plaintiff's vehicle, finding nothing—the encounter at this point began to "last . . . longer than [was] necessary to effectuate the purpose of the stop." *See Florida v. Royer*, 460 U.S. 491, 500 (1983). As a result, the encounter entered the realm of an unreasonably prolonged—and therefore unconstitutional—seizure. *See Caballes*, 543 U.S. at 407–08.

Accordingly, the Court finds that Plaintiff has stated a claim for unreasonable seizure in violation of the Fourth Amendment.

c. Excessive Force

Third, Plaintiff alleges that the Defendant Officers "us[ed] excessive force in interrogating Plaintiff for close to an hour, surrounding Plaintiff with six Officers (all of whom were Caucasian), creating false allegations of drug possession, forcing Plaintiff to lie face-down on the asphalt, handcuffing his hands behind his back and taking him off to jail." (Am. Compl. ¶ 30.) Defendants argue that Plaintiff has failed to state a claim for excessive force because the allegations show that Plaintiff remained at the scene by his own free will and consent, not as a result of any force, and further that, once Plaintiff was arrested for possession of two controlled substances, shackling an arrestee is not unreasonable force. (Mem. Supp. Mot. Dismiss 10–11.)

A Fourth Amendment claim of excessive force is based upon a citizen's right to be free from "*physically* intrusive governmental conduct." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis added); *see also Veney v. Ojeda*, 321 F. Supp. 2d 733, 741 (E.D. Va. 2004) ("[T]he Supreme Court has made clear that a claim of excessive use of force by an officer arises

12

under the Fourth Amendment[,] which . . . includes the right to be free of physically abusive governmental conduct."). Accordingly, while physical injury is not a prerequisite to bringing an excessive force claim, an excessive force claim only lies where governmental officers have improperly exercised their "right to use some degree of *physical coercion or threat thereof* to effect [an arrest or investigatory stop]." *Graham*, 490 U.S. at 396 (emphasis added). Placed in this context, the only parts of Plaintiff's allegation of excessive force capable of stating a claim in the Amended Complaint are the Defendant Officers' acts of "forcing Plaintiff to lie face-down on the asphalt, handcuffing his hands behind his back and taking him off to jail." (Am. Compl. ¶ 30.)[1]

A court determines whether an officer has used excessive force to effect a seizure based on a standard of "objective reasonableness." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (citation omitted). A court should consider the facts "from the perspective of a reasonable officer on the scene," and it should avoid judging officers' conduct with the "20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396–97). A court does not consider the officers' "intent or motivation." *Id.* (quoting *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996)). Rather, "the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Id.* (quoting *Elliott*, 99 F.3d at 642). "The extent of the plaintiff's injury is also a relevant consideration." *Id.* (citing *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994).

---

[1] While Plaintiff might argue that the atmosphere created by six Caucasian officers surrounding one twenty-one-year-old African-American male telegraphed a threat of physical coercion, courts have consistently held that the mere presence of an intimidating factor (e.g., a police canine, or an unholstered taser) does not, without more, constitute the use of excessive force. *See, e.g., Saad v. City of Dearborn*, 2011 U.S. Dist. LEXIS 81390, at *12–13 (E.D. Mich. July 26, 2011); *Gaines v. Gloucester City Police Dep't*, 2010 U.S. Dist. LEXIS 19770, at *13–14 (D.N.J. Mar. 3, 2010); *Navratil v. Parker*, 726 F.Supp. 800, 803 (D. Colo. 1989). Indeed, Plaintiff does not even pursue such a theory of excessive force in Plaintiff's Brief in Opposition to the Motion to Dismiss. Accordingly, the Court finds that the allegation that Defendants "surround[ed] Plaintiff with six Officers (all of whom were Caucasian)" is insufficient to state a claim for excessive force.

In this case, the facts alleged do not support a claim that the Defendant Officers used objectively unreasonable force during the course of their hour-long encounter. Plaintiff has not alleged that he was physically injured in any way by the Defendant Officers during his seizure or arrest. Rather, Plaintiff simply alleges that he was told to sit on the ground while the Defendant Officers searched his car and that he was forced to lie face-down on asphalt so that the Defendant Officers could handcuff him, after which he was taken to jail. Nothing about these allegations suggests excessive police behavior; rather, they suggest standard and reasonable police behavior. The Fourth Circuit and other courts in this District have similarly found that a plaintiff "alleging the use of excessive force in the course of an arrest . . . . must allege more than a de minimis injury." *Harris v. City of Va. Beach*, 11 Fed. Appx. 212, 216 (4th Cir. 2001) (unpublished opinion) (citing *Cooper v. City of Va. Beach*, 817 F. Supp. 1310, 1314 (E.D. Va. 1993); *Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999)). In *Carter v. Morris*, the Fourth Circuit found that the plaintiff's allegations "that her handcuffs were too tight and that an officer pushed her legs as she got into the police car" were "so insubstantial that [they] cannot as a matter of law support her claim under . . . the Fourth Amendment . . . ." 164 F.3d at 219 n.3. In this case, Plaintiff does not even allege that his handcuffs were too tight. Accordingly, Plaintiff has failed to allege facts that "permit the court to infer more than the mere possibility of misconduct," and therefore he has not sufficiently alleged an excessive force claim. *See Iqbal*, 556 U.S. at 679.

d. Unlawful Arrest

The last allegation underlying Count One is that the Defendant Officers violated Plaintiff's Fourth Amendment rights by "arresting Plaintiff without probable cause, or even reason to believe there was probable cause, especially in light of the fact that Plaintiff made the Defendants aware of readily exculpatory evidence." (Am. Compl. ¶¶ 23–24, 30.) Defendants

argue that probable cause did exist to arrest Plaintiff because two controlled substances were found in his vehicle, and they argue further that the Defendant Officers had no affirmative duty to investigate the alleged exculpatory evidence. (Mem. Supp. Mot. Dismiss 14.)

Defendants rely on the Fourth Circuit's oft-repeated holding that "the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause." (Reply 14–15 (quoting *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) (citing *Smith v. Reddy*, 101 F.3d 351, 357 (4th Cir. 1996); *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991))).) However, Defendants ignore the distinction drawn by the Fourth Circuit between a "potentially exculpatory lead" and "readily available exculpatory evidence." *Wadkins*, 214 F.3d at 541; *Reddy*, 101 F.3d at 357. The circuit court has stated numerous times that, while "[r]easonable law enforcement officers are not required to 'exhaust every potentially exculpatory lead . . . before probable cause is established,'" *Torchinsky*, 942 F.2d at 264, "an officer may not disregard readily available exculpatory evidence of which he is aware." *Wadkins*, 214 F.3d at 541 (citing *Reddy*, 101 F.3d at 357). If the information Plaintiff provided to the Defendant Officers regarding his prescriptions qualifies as "readily available exculpatory evidence" rather than merely a "potentially exculpatory lead," then the Defendant Officers' failure to pursue it can indeed negate probable cause, thereby rendering Plaintiff's arrest unconstitutional.

In this case, Plaintiff has alleged that he told the Defendant Officers that he had prescriptions for the two drugs found in his car and that the prescriptions were filled from a 24-hour pharmacy. (Am. Compl. ¶ 23.) Plaintiff also provided the Defendant Officers with the name and location of the pharmacy so that they could confirm that he spoke the truth. (*Id.*) Lastly, Plaintiff alleges that the Defendant Officers refused to contact or let him contact the pharmacy. (*Id.* at ¶ 24.) Considering these allegations in the light most favorable to the Plaintiff, the Court finds that Plaintiff has sufficiently alleged facts that could support a finding that the

Defendant Officers disregarded readily available exculpatory evidence, rather than simply a potentially exculpatory lead, and therefore they did not in fact establish probable cause to arrest Plaintiff. *See Wadkins*, 214 F.3d at 541. Therefore, Plaintiff has stated a claim for arrest without probable cause, in violation of his Fourth Amendment rights.

e. Allegations Sufficient to Satisfy *Twombly's* Notice Requirement

Finally, the Court rejects Defendants' argument that Plaintiff has failed to state a claim against them because his allegations do not assign specific actions to each individual Defendant Officer. The Court finds that the allegations in Plaintiff's Amended Complaint are sufficient to put the Defendant Officers on notice of Plaintiff's claims—i.e., that their actions surrounding Plaintiff's arrest on August 2, 2014 are alleged to be unconstitutional. While the Amended Complaint does only assign specific actions to Officer Moore, Plaintiff's fact-based allegations nevertheless place the other Defendant Officers at the scene of Plaintiff's arrest and allege their collective participation in the unlawful search of Plaintiff's vehicle, Plaintiff's interrogation at the scene, and Plaintiff's ultimate arrest and transportation to jail. (Am. Compl. ¶¶ 17–24.) These allegations, taken as true, are sufficient to raise to a plausible level Plaintiff's claims that the Defendant Officers participated in the improper search, seizure, and arrest of Plaintiff. That is sufficient for present notice purposes and satisfies the "liberal" pleading requirements of Rule 8 at this stage in the litigation. *See Twombly*, 550 U.S. at 555; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

3. *The Rights Defendants Violated Were Clearly Established*

Finding that Plaintiff has stated a claim against the Defendant Officers for violations of his constitutional rights to be free from unreasonable search, seizure, and arrest, the Court must determine whether these rights were clearly established at the time of the violation. The "dispositive inquiry in determining whether a right is clearly established is whether it would be

clear to a reasonable officer that his conduct was unlawful *in the situation he confronted.*" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (emphasis added). "Officials are not liable for bad guesses in grey areas; they are liable for transgressing bright lines." *Maciariello v. Summer*, 973 F.2d 295, 298 (4th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)). Precedent determines whether a reasonable officer can be expected to know that his conduct is unlawful. As stated by the Supreme Court, "qualified immunity is lost when plaintiffs point . . . to 'cases of controlling authority in their jurisdiction at the time of the incident.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 746 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)); *see also Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 539 (4th Cir. 2017). An allegedly violated right need not have been specifically recognized among existing precedent for it to be "clearly established" for qualified immunity purposes. Rather, a court must consider "not only 'specifically adjudicated rights,' but also 'those manifestly included within more general applications of the core constitutional principles invoked.'" *Booker*, 855 F.3d at 538 (quoting *Wall v. Wade*, 741 F.3d 492, 502–03 (4th Cir. 2014)).

a. Unreasonable Search

The United States Supreme Court has ruled that "[i]t is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth*, 412 U.S. at 219 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)) (citing cases). "It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Id.* Stated in the inverse, a search conducted without a warrant, without probable cause, and without consent or any other exception to the warrant requirement is unconstitutional. The Court has already found that Plaintiff has sufficiently alleged that the

second and third searches of his car were conducted without a warrant, without probable cause, and without Plaintiff's consent, and the parties neither argue nor does the Court find that any other exception to the warrant requirement justified the latter two searches performed in this case. Nevertheless, the Court must further ask whether a "reasonable officer would have understood that his conduct"—re-searching Plaintiff's car after one unfruitful search and after a check of Plaintiff's ID raised no flags—violated Plaintiff's asserted right to be free from unreasonable search. *See Saucier*, 533 U.S. at 202; *Miller v. Prince George's Cty*, 475 F.3d 621, 627 (4th Cir. 2007).

Defendants argue that a reasonable officer would not have understood that his conduct violated Plaintiff's constitutional rights, because no precedent from the Supreme Court, the Fourth Circuit, or the Supreme Court of Virginia establishes that each individual officer who searches a person's vehicle must obtain that person's consent, or that consent to a search can be withdrawn without an express statement or action by the person who gave such consent. (Reply 8–9.) Defendants do not consider, however, the precedent from the United States Supreme Court establishing that the scope of a suspect's consent is limited by objective reasonableness. *See Jimeno*, 500 U.S. at 251 ("The standard for measuring the scope of a suspect's consent [to a search] under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"). Accordingly, based on this Supreme Court precedent, a reasonable officer in the context of this case should have understood that he could not just assume that Plaintiff, having consented to *a* search of his car, consented to repeated searches of his car after the first search turned up nothing; rather, a reasonable officer needed to consider the objective scope of Plaintiff's consent.

18

Because the record at this stage of the case is not sufficiently developed to determine whether it was objectively reasonable or unreasonable for the Defendant Officers to believe that the scope of Plaintiff's consent extended to a second and third search of Plaintiff's car, granting the Defendant Officers qualified immunity on this claim would require drawing inferences against the Plaintiff, which is precisely the opposite of this Court's role in deciding a motion to dismiss. *See T.G. Slater*, 385 F.3d at 841. Therefore, the Court must deny the defense of qualified immunity as to Plaintiff's unreasonable search claim at this time.

b. Unreasonable Seizure

The United States Supreme Court has made clear that the Fourth Amendment right against unreasonable seizure protects against seizures that are "prolonged beyond the time reasonably required to complete [the] mission" for which the encounter was initiated. *Caballes*, 543 U.S. at 407. The Court has found that Plaintiff has sufficiently alleged that the Defendant Officers unreasonably seized Plaintiff in this instance. It must now determine whether a reasonable officer would have understood that, by demanding that Plaintiff take a seat on the ground and conducting two additional searches of Plaintiff's vehicle, he was violating Plaintiff's right to be free from unreasonably prolonged seizures. *See Saucier*, 533 U.S. at 202.

Plaintiff has alleged that the first search of his vehicle uncovered nothing. Plaintiff has also alleged that Officer Moore's check of Plaintiff's ID turned up nothing. Based on these two facts, and drawing all inferences in favor of the Plaintiff, the Court finds that Plaintiff has stated facts sufficient to support a finding that a reasonable officer would not have believed that he had reason to prolong Plaintiff's seizure in order for the Defendant Officers to conduct another two searches of Plaintiff's vehicle. Accordingly, the Defendant Officers are not entitled to qualified immunity as to Plaintiff's unreasonable search claim at this time.

c. Unlawful Arrest

A warrantless arrest is only lawful if it is based upon probable cause. *United States v. Robinson*, 414 U.S. 218, 235 (1973). The Fourth Circuit has established that, although "the failure to pursue potentially exculpatory leads will not negate probable cause," an officer may not disregard readily available exculpatory evidence of which he is aware in order to establish probable cause. *Wadkins*, 214 F.3d at 541.

In the situation confronted by the Defendant Officers in this case, the factual allegations support an inference that a reasonable officer would have known he was disregarding readily available exculpatory evidence. The Defendant Officers had on hand all the information and means necessary to quickly verify or debunk Plaintiff's proffered readily available exculpatory evidence: there were six officers present at the scene, so tasking one officer with calling the pharmacy would not have taken away from either searching Plaintiff's vehicle or guarding Plaintiff; Plaintiff had provided the information necessary for contacting his pharmacy; and the pharmacy was open twenty-four hours. Plaintiff was not attempting to refer the Defendant Officers to a doctor's office that would likely be closed at that hour or to a person who would likely not answer a phone call. Based on the facts alleged and drawing all reasonable inferences in favor of the Plaintiff, the Court finds that Plaintiff has sufficiently alleged facts to support a finding that the Defendant Officers had no reasonable basis for disregarding the readily available exculpatory evidence that Plaintiff made them aware of. Accordingly, under the circumstances of the encounter, the Defendant Officers could not have reasonably believed that they had probable cause to arrest Plaintiff. As a result, the Defendant Officers are not entitled to the defense of qualified immunity on this claim at this stage of the litigation.

For the reasons stated above, the Court finds that Plaintiff has sufficiently alleged that the Defendant Officers violated rights under the Fourth Amendment to be free from unreasonable

search, seizure, and arrest, and that these rights were clearly established at the time of the violations. Therefore, the Court RECOMMENDS that the Motion to Dismiss be DENIED as to subparts (i), (ii), and (iv) of Count One and that it be GRANTED only as to subpart (iii) of Count One and as to any claim in Count One against Col. Dupuis and the County.

**B. Conspiracy to Violate Plaintiff's Fourth Amendment Rights – § 1983**

In Count Two of the Amended Complaint, Plaintiff alleges that Defendants conspired to deprive Plaintiff of his constitutional right to be free from unreasonable searches and seizures. Defendants argue that Plaintiff has failed to state a claim for conspiracy because he only alleges bare, conclusory allegations.[2] The Court agrees.

"To establish a civil conspiracy under § 1983, [Plaintiff] must present evidence that the [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Under *Twombly*, Plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Although the Court has found that Plaintiff has sufficiently alleged a violation of his Fourth Amendment rights by the Defendant Officers, Plaintiff has not alleged facts that show a "plausible suggestion of conspiracy," *id.* at 556, as well as facts that would "reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 421.

The Amended Complaint makes bare, conclusory allegations that the Defendants conspired to violate Plaintiff's constitutional rights and that they took overt actions in furtherance of the conspiracy. Plaintiff does not allege a common purpose, and the Amended

---

[2] Defendants also challenge Plaintiff's conspiracy claim on the basis of the intracorporate conspiracy doctrine. Because the Court finds the Plaintiff has failed to state a claim, the Court does not reach the question of whether or not the intracorporate conspiracy doctrine would bar a § 1983 conspiracy claim against the Defendants.

Complaint does not allege any facts, even viewed in the light most favorable to the Plaintiff, that could lead the Court to reasonably find that the Defendants—or even just the Defendant Officers—"came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 421. Therefore, the Court RECOMMENDS the Motion to Dismiss be GRANTED with respect to Count Two.

## C. Malicious Prosecution – § 1983

In Count Three, Plaintiff alleges that "Defendants maliciously caused a seizure of Plaintiff pursuant to legal process unsupported by probable cause, and the ensuing criminal proceedings terminated in Plaintiff's favor." (Am. Compl. ¶ 40.) Defendants argue that the facts pled in the Amended Complaint do not state a plausible cause of action for § 1983 malicious prosecution. (Mem. Supp. Mot. Dismiss 17–18.) In rebuttal, Plaintiff simply incorporates by reference his arguments with regard to his basic § 1983 claim for violation of his Fourth Amendment Rights.

First, the Court notes that Count Three must be dismissed to the extent that Plaintiff is alleging that all Defendants—including Col. Dupuis and the County—violated his constitutional rights. *See supra* Part A (discussing the lack of *respondeat superior* liability in     § 1983 claims). Because the Defendant Officers were the only Defendants individually involved in the alleged actions underpinning Count Three, they are the only Defendants properly subject to Count Three.

The Court further notes that the Defendant Officers' defense of qualified immunity is raised against Count Three as well. Accordingly, the Court must apply the same two-step analysis that it used when discussing Plaintiff's § 1983 claim for unreasonable search, seizure, and arrest. *See supra* Part A. First, the Court must determine whether Plaintiff has alleged facts sufficient to support a reasonable inference that the Defendant Officers' conduct amounted to

22

malicious prosecution, violating a constitutional right under § 1983. *See T.G. Slater*, 385 F.3d at 841; *Evans*, 703 F.3d at 646. If the Court finds that Plaintiff has sufficiently alleged a constitutional violation, it must then determine whether the facts pled plausibly support a finding that "instituting criminal proceedings against him violated a clearly established rule." *Humbert v. Mayor of Balt. City*, 2017 U.S. App. LEXIS 14511 at *30–31 (4th Cir. Aug. 7, 2017); *Twombly*, 550 U.S. at 570.

### 1. Plaintiff Has Sufficiently Alleged Malicious Prosecution

A claim for § 1983 malicious prosecution "is properly understood as a Fourth Amendment Claim for unreasonable seizure which incorporates certain elements of the common law tort." *Chalmers*, 703 F.3d at 647 (citation omitted). "To succeed, a plaintiff must show that 'the defendant[s] (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [the] plaintiff's favor.'" *Humbert*, 2017 U.S. App. LEXIS 14511 at *13 (quoting *Chalmers*, 703 F.3d at 647) (second alteration in original).

The Court has already found that Plaintiff has stated a claim that the Defendant Officers caused Plaintiff to be seized (i.e., arrested) before they had established probable cause to do so, because the Defendant Officers failed to consider readily available exculpatory evidence when they arrested him for possession of two controlled substances. *See supra* Part A. Plaintiff has alleged facts to show that, as a result of his seizure and arrest absent probable cause, he was criminally charged. (Am. Compl. ¶ 26.) Further, Plaintiff has alleged that the prosecutor entered a *nolle prosequi* for both of the felonies charged against Plaintiff. (*Id.* ¶ 27.) Accordingly, at this Rule 12(b)(6) stage, Plaintiff has stated a claim for malicious prosecution in violation of the Fourth Amendment.

## 2. The Right That Defendants Violated Was Clearly Established

At the time of the events in issue, "[t]he law made clear that arresting and initiating legal process against a person without probable cause amounts to a seizure in violation of the Fourth Amendment." *Humbert*, 2017 U.S. App. LEXIS 14511 at *31 (citing *Lambert v. Williams*, 223 F.3d 257, 261–62 (4th Cir. 2000); *Brooks v. City of Winson-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)). Defendants nevertheless argue that "a reasonable objective officer on the scene would conclude that probable cause existed to arrest Plaintiff . . . . [and] based on the factual allegations in the Amended Complaint, it is clear that Defendants had probable cause to arrest Plaintiff . . . . (Mem. Supp. Mot. Dismiss 17–18.) The Court has already concluded that Plaintiff has alleged sufficient facts to support a finding that the Defendant Officers had no reasonable basis for disregarding the readily available exculpatory evidence that Plaintiff made them aware of and that, therefore, under the circumstances of the encounter, the Defendant Officers could not have reasonably believed that they had probable cause to arrest Plaintiff. *See supra* Part A.3.c. Based on this determination, the Court similarly concludes that the Defendant Officers are not entitled to qualified immunity on Count Three at this time. Accordingly, the Court RECOMMENDS that the Motion to Dismiss be DENIED as to Count Three with regard to the claim against the Defendant Officers, but that it be GRANTED with regard to any claim in Count Three against Col. Dupuis or the County.

## D. *Monell* Claims – § 1983

Count Four alleges that the County and Col. Dupuis failed to adequately supervise and train their police officers, and that the County and Col. Dupuis willfully "developed, implemented, enforced, encouraged, and/or sanctioned [unconstitutional] policies, practices, and/or customs . . . ." (Am. Compl. ¶ 47–48.) Defendants argue that Plaintiff has failed to state a claim because he does not allege any *official* municipal policy or custom fostered by

24

Defendants. (Mem. Supp. Mot. Dismiss 19–22.) Defendants further argue that Plaintiff has failed to state a claim against Col. Dupuis because Plaintiff has not alleged "specific allegations connecting conduct by Colonel Dupuis to Plaintiff's alleged constitutional deprivation." (*Id.* 24.) For the reasons discussed below, the Court agrees.

Although "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents[,] . . . when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[,] . . . the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A policy or custom giving rise to § 1983 liability will not, however, 'be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees.'" *Newhard v. Borders*, 649 F. Supp. 2d 440, 446 (W.D. Va. 2009) (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984)). Rather, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Stated another way, while "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury[,]" such liability can only attach where the facts show deliberate indifference to citizens' rights, i.e., that the municipality's policymakers had actual or constructive knowledge of the constitutional deficiencies of the municipality's training program. *City of Canton v. Harris*, 489 U.S. 378, 388–90 (1989); *see also Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

With regard to individuals in a supervisory capacity, § 1983 allows for liability only where the plaintiff can establish three elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799 (citing cases). Supervisory liability is proper in cases where a supervisor's "indifference or tacit authorization of subordinate misconduct" is "a *direct* cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (emphasis added).

In this case, the Court finds that Plaintiff has failed to allege facts sufficient to state a claim for either municipal or supervisory liability under § 1983. The Amended Complaint offers nothing more than conclusory allegations that the County, by and through Col. Dupuis, developed and enforced policies and practices exhibiting deliberate indifference to Plaintiff's constitutional rights (Am. Compl. ¶ 46); that the County and Col. Dupuis failed to adequately supervise and train their officers (*Id.* ¶ 47); and that the County and Col. Dupuis

> developed, implemented, enforced, encouraged, and/or sanctioned the policies, practices, and/or customs of (i) unlawfully profiling and/or arresting, without reasonable suspicion or probable cause, those who fit the criminal stereotype of African-American males like Plaintiff and (ii) mandating at least two (2) to three (3) traffic stops and one (1) arrest every shift, which, if not met by a police officer, would result in disciplinary action.

(*Id.* ¶ 48.) Plaintiff argues that, because the Amended Complaint identifies specific policies put in place by the County and Col. Dupuis (rather than simply alleging that unconstitutional policies are in place), he has sufficiently stated a claim. (Br. Opp. 19.) In other words, Plaintiff asks the Court to accept the allegations themselves as sufficient to demonstrate the existence of such a policy. (*Id.*) However, the policies alleged in Plaintiff's complaint are presented with no factual support other than Plaintiff's own interaction with Defendants—a single instance of alleged

unconstitutional activity. The Supreme Court has explicitly stated that "a single incident of police misbehavior . . . is insufficient as sole support for an inference that a municipal policy or custom caused the incident." *Oklahoma City v. Tuttle*, 471 U.S. 808, 833 (1985) (emphasis omitted). Accordingly, Plaintiff has failed to allege facts sufficient to support a finding that the County and Col. Dupuis established, promulgated, etc. unconstitutional policies within the context of § 1983 liability.[3]

Moreover, Plaintiff has not alleged *facts* sufficient to support a reasonable inference that Defendants made "a deliberate choice . . . from among various alternatives" to establish the alleged intentionally discriminatory policy based on racial profiling or the policy of arrest quotas and traffic stop quotas. *Pembaur*, 475 U.S. at 483. Plaintiff has not alleged facts to support a reasonable inference that policymakers in the County or Col. Dupuis had actual or constructive knowledge of the alleged constitutional deficiencies of the County's training program such that the alleged failure to train evidences deliberate indifference to the rights of citizens like Plaintiff. *See City of Canton*, 489 U.S. at 388–90. Finally, Plaintiff has not alleged any facts that suggest Col. Dupuis had actual or constructive knowledge of the Defendant Officers' unconstitutional conduct with regard to citizens like Plaintiff, such that his "indifference or tacit authorization" of such conduct may be reasonably inferred. *Beorn*, 896 F.2d at 854; *Shaw*, 13 F.3d at 799.

Because the Amended Complaint lacks any factual allegations to support a reasonable inference of municipal or supervisory liability to support a § 1983 claim against the County or

---

[3] Plaintiff also attempts to provide *post-hoc* support for his *Monell* claims in his Brief in Opposition to the Motion to Dismiss, wherein he cites to "several news reports" that support his theory of unconstitutional policy and inadequate training and supervision. (Br. Opp. 19.) The Court does not consider these arguments because its analysis at the Rule 12(b)(6) stage in this case is limited to consideration of facts properly alleged within the four corners of the Amended Complaint. *Compare to Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F. Supp. 2d 558 (E.D. Va. 2011) (Plaintiff included specific allegations of an historical pattern of unconstitutional treatment, including news articles and Immigration and Customs Enforcement and American Bar Association reports, in his Amended Complaint, and this provided sufficient factual basis for his § 1983 municipal liability claims to survive a Rule 12(b)(6) motion to dismiss.).

Col. Dupuis, the Court RECOMMENDS that the Motion to Dismiss be GRANTED as to Count Four.

### E. Malicious Prosecution – Virginia Law

In Count Five, Plaintiff asserts a claim of common law malicious prosecution against all Defendants. As an initial matter, Defendants challenge Plaintiff's blanket-pleading of Count Five against all Defendants. (Mem. Supp. Mot. Dismiss 25.) The Court agrees that Plaintiff has alleged no particular facts that support the assertion of Count Five against the County and against Col. Dupuis, and so it RECOMMENDS that the Motion to Dismiss be GRANTED as to Count Five, to the extent that Count Five seeks to state a claim against the County and Col. Dupuis. However, for the reasons stated previously, the Court finds that Plaintiff has sufficiently alleged that Defendant Officers' individual involvement in his arrest and transportation to jail, such that the notice element and liberal pleading requirements of Rule 8 are satisfied with regard to Count Five as to the Defendant Officers. *See supra* Part III.A.2.e.

Regarding the substance of Plaintiff's claim, Defendants incorporate their earlier arguments that probable cause existed to arrest Plaintiff, and they further argue that Plaintiff states only conclusory allegations in support of the "malicious" element of this claim. (Mem. Supp. Mot. Dismiss 25.) Plaintiff similarly incorporates his earlier arguments in support of his claims for § 1983 wrongful arrest and malicious prosecution, and he further argues that the Amended Complaint pleads facts with sufficient specificity to satisfy pleading requirements at this stage of the litigation. (Br. Opp. 15–16.)

To state a claim for malicious prosecution under Virginia law, a plaintiff must allege "that the prosecution was (1) malicious; (2) instituted by, or with the cooperation of, the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Hudson v. Lanier*, 249 S.E.2d 471, 473 (Va. 1998). The Court has already found that

Plaintiff has sufficiently alleged facts to satisfy elements (2)–(4) of this test. *See supra* Part III.C. Accordingly, the only issue in dispute is whether Plaintiff has alleged facts to support a reasonable inference that the Defendant Officers acted with malice.

"In the context of a malicious prosecution action, malice is defined as any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." *Id.* (emphasis omitted) (citing *Freezer v. Miller*, 176 S.E. 159, 169 (Va. 1934)). Although the "malice" required in a malicious prosecution case may not be imputed as a matter of law by a simple showing of the absence of probable cause, it may be proven by inference from a lack of probable cause if the circumstances of the case support the inference. *Freezer*, 176 S.E. at 167–68. In other words, the "want of probable cause is evidence of malice." *Southern Ry. Co. v. Mosby*, 70 S.E. 517, 520 (Va. 1911). And while an inference of malice may not be drawn automatically simply on a showing of the absence of probable cause, in some cases, there may be "such a want of probable cause" that an inference of legal malice may be warranted, based on nothing more. *Giant of Va., Inc. v. Pigg*, 152 S.E.2d 271, 276 (Va. 1967); *see also Bennett v. R&L Carriers Shared Servs., LLC*, 744 F. Supp. 2d 494, 522 (E.D. Va. 2010).

The Court has already determined that Plaintiff has sufficiently alleged that his arrest and subsequent prosecution were conducted without probable cause. Accordingly, Plaintiff has alleged facts upon which an inference of malice may be built. *See Freezer*, 176 S.E. at 168; *Pigg*, 152 S.E.2d at 276. Because the Court is obligated to draw all reasonable inferences in favor of the Plaintiff at the Rule 12(b)(6) stage, the Court finds that Plaintiff has sufficiently alleged the element of malice, and consequently, taken with the Court's other findings, he has stated a claim for common law malicious prosecution in Virginia. The Court therefore

RECOMMENDS that Defendant's Motion to Dismiss be DENIED as to Count Five, to the extent that Count Five seeks to state a claim against the Defendant Officers.

## IV. CONCLUSION

In conclusion, for the reasons discussed above, the Court RECOMMENDS that the Defendants' Motion to Dismiss (ECF No. 5) be disposed of as follows:

Count One: DENIED as to subparts (i), (ii), and (iv) and GRANTED as to subpart (iii) with respect to any claim against Col. Dupuis and the County;

Count Two: GRANTED;

Count Three: DENIED with respect to Plaintiff's claim against the Defendant Officers, and GRANTED with respect to any claim against Col. Dupuis and the County;

Count Four: GRANTED;

Count Five: DENIED with respect to Plaintiff's claim against the Defendant Officers, and GRANTED with respect to any claim against Col. Dupuis and the County.

Let the Clerk file this Report and Recommendation electronically, forward a copy to the Honorable M. Hannah Lauck and notify all counsel of record accordingly.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon the grounds of plain error.**

Richmond, Virginia
Date: August 24, 2017

/s/
Roderick C. Young
United States Magistrate Judge