IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

COREY A. HOWELL,

    Plaintiff,

v.                                                                     Civil Action No. 3:16cv649

ADAM M. MOORE, *et al.*,

    Defendants.

## MEMORANDUM ORDER

Plaintiff Corey A. Howell brings this action against five officers in the Chesterfield County Police Department[1] in their individual and official capacities, Chesterfield County Police Department Chief of Police Colonel Thierry G. Dupuis ("Colonel Dupuis") in his individual and official capacity, and Chesterfield County, Virginia ("the County") (collectively, the "Defendants"). Howell brings his action pursuant to 42 U.S.C. § 1983[2] and Virginia state law,

---

[1] The five officers are: (1) Officer Adam M. Moore; (2) Sergeant Russell M. Granderson; (3) Sergeant Gary T. Bailey; (4) Officer Sean D. Retter; and, (5) Sergeant Matthew R. Dunn, (collectively, the "Defendant Officers").

[2] Section 1983 provides a private right of action for a violation of constitutional rights by persons acting under the color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

alleging that the Defendants violated his Fourth Amendment[3] rights by unlawfully seizing him, unlawfully searching his car, and unlawfully arresting him. Howell also asserts claims of malicious prosecution and conspiracy.

## I. Procedural History

After Howell filed his Complaint, the Defendants filed a Motion to Dismiss all five counts (the "Motion to Dismiss"). (ECF No. 5.) The Court referred the Motion to Dismiss to the Honorable Roderick C. Young, United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Federal Rule of Civil Procedure 72(b). The Magistrate Judge heard argument on August 22, 2017, but neither party chose to supplement the record by submitting evidence. (ECF No. 12.) Judge Young filed a Report and Recommendation on August 24, 2017 ("R&R"). (ECF No. 13.)

By copy of the R&R, all parties were advised of the right to file written objections to the findings and recommendations made by Judge Young within fourteen days. 28 U.S.C. § 636(b)(1); (R&R 30). On September 7, 2017, Defendants filed an Objection to the R&R ("Defendants' Objection"). (ECF No. 14.) On the same day, Howell filed an Objection to the R&R ("Plaintiff's Objection"). (ECF No. 15.) On September 21, 2017, Defendants filed a response to Plaintiff's Objection ("Defendants' Response"). (ECF No. 16.)

For the reasons stated below, the Court adopts the R&R in full. The Court briefly recounts the factual allegations in Howell's Amended Complaint and the proposed rulings of the R&R before explaining its ruling on the objections before it.

---

[3] The Fourth Amendment to the United States Constitution provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

## II. Summary of Allegations in the Amended Complaint

Howell's Amended Complaint arises from events that occurred beginning at 11:30 p.m. on August 2, 2014. Howell had become drowsy while driving and had pulled into a parking lot to rest. Sometime after Howell parked, Officer Moore approached Howell's car, asked for Howell's identification, and sought consent to search the car. Howell consented to the search, which then continued for approximately one hour, resulted in the Defendant Officers discovering two pills—for which Howell had a prescription—and culminated in Howell's arrest for two felonies. Those charges were later dismissed.

Howell pleads five counts in his Amended Complaint and asserts each count against multiple defendants. Howell brings Count One (the "Fourth Amendment Claim"), Count Two (the "Conspiracy Claim"), Count Three (the "§ 1983 Malicious Prosecution Claim"), and Count Five (the "Common Law Malicious Prosecution Count") against all Defendants. Howell brings Count Four (the "*Monell*[4] Claim") against only the County and Colonel Dupuis. Defendants moved to dismiss all five counts of Howell's Amended Complaint, arguing that Howell failed to state a claim for a violation of his constitutional rights and, even if he did state a claim, qualified

---

[4] Because the doctrine developed from case law, courts call an action brought against a local government alleging a "policy or custom" that gives rise to local government liability a "*Monell* claim." In *Monell v. Department of Social Services of New York*, the Supreme Court held that

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

436 U.S. 658, 694 (1978).

3

immunity protects the Defendants from suit.[5] Howell asserts the following five claims in his Amended Complaint:

> **Count One (the "Fourth Amendment Claim"):** The Defendant Officers, the County, and Colonel Dupuis violated Howell's Fourth Amendment rights by:
>
>> (i) exceeding the scope of Howell's consent to search his vehicle (the "unlawful search");
>>
>> (ii) detaining Howell for longer than necessary (the "unlawful seizure");
>>
>> (iii) using excessive force (the "excessive force"); and,
>>
>> (iv) arresting Howell without probable cause (the "unlawful arrest").
>
> **Count Two (the "Conspiracy Claim"):** The Defendant Officers, the County, and Colonel Dupuis conspired to violate Howell's Fourth Amendment rights.
>
> **Count Three (the "§ 1983 Malicious Prosecution Claim"):** The Defendant Officers, the County, and Colonel Dupuis maliciously initiated prosecution without probable cause.
>
> **Count Four (the "*Monell* Claim"):** The County and Colonel Dupuis implemented and enforced policies, and failed to adequately supervise and train the Defendant Officers, leading to the deprivation of Howell's constitutional rights.
>
> **Count Five (the "Common Law Malicious Prosecution Claim"):** The Defendant Officers, the County, and Colonel Dupuis maliciously initiated prosecution without probable cause.

---

[5] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

## III. The Report & Recommendation

### A. The Recommendations of the R&R

The Magistrate Judge heard oral argument on August 22, 2017. Neither party sought to, or did, supplement the record. On August 24, 2017, Judge Young filed the R&R. After a detailed discussion of the facts before him and a thorough analysis of relevant law, Judge Young recommended that the Court grant in part the Motion to Dismiss. The Magistrate Judge recommended that the Court dismiss the following claims in the Amended Complaint:

**Count One (the "Fourth Amendment Claim"):**

> **Subsection (i) (the "Unlawful Search"):** dismiss the County and Colonel Dupuis;
> **Subsection (ii) (the "Unlawful Seizure"):** dismiss the County and Colonel Dupuis;
> **Subsection (iii) (the "Excessive Force"):** dismiss entirely; and,
> **Subsection (iv) (the "Unlawful Arrest"):** dismiss the County and Colonel Dupuis.

**Count Two (the "Conspiracy Claim"):** dismiss entirely.

**Count Three (the "§ 1983 Malicious Prosecution Claim"):** dismiss the County and Colonel Dupuis.

**Count Four (the "*Monell* Claim"):** dismiss entirely.

**Count Five (the "Common Law Malicious Prosecution Claim"):** dismiss the County and Colonel Dupuis.

In sum, Judge Young recommended that the Court dismiss all claims against the County and Colonel Dupuis, and dismiss in full the Excessive Force aspect of Howell's Fourth Amendment Claim and his *Monell* claim. Judge Young further recommended that the Unlawful Search, Unlawful Seizure, and Unlawful Arrest aspects of the Fourth Amendment Claim, the § 1983 Malicious Prosecution Claim, and the Common Law Malicious Prosecution Claim remain against the Defendant Officers in their individual and official capacities.

5

B.   **The Parties' Objections**

Defendants and Howell both objected to various findings and recommendations of the R&R, which the Court discusses below.

1.   **Defendants' Objections**

Defendants raise two objections to the R&R. First, they contend again, as they did in their Motion to Dismiss, that

> the vague, general allegations in the Amended Complaint are [in]sufficient to state a claim against each of the Defendant Officers for violation of Plaintiff's Fourth Amendment right to be free from unreasonable search (Count I), unreasonable seizure (Count I), unlawful arrest (Count I), and malicious prosecution (Count III) and for common law malicious prosecution (Count V).

(Defs.' Obj. 1.)

Second, they object to Judge Young's finding that the Defendant Officers "are not entitled to qualified immunity on Plaintiff's Fourth Amendment claims for unreasonable search (Count I), unreasonable seizure (Count I), unlawful arrest (Count I), and malicious prosecution (Count III) and for common law malicious prosecution (Count V)." (Defs.' Obj. 4.) Thus, via these objections, Defendants restate the arguments they made in their Motion to Dismiss—that Howell fails to state a claim for any violation of his constitutional rights and that, even if he did, qualified immunity protects them from suit.

2.   **Howell's Objections**

Howell objects to two findings in the R&R. First, Howell objects to "the [R&R's] conclusions regarding the claim of excessive force in Count I to the extent the Report could be read to disallow Plaintiff from raising the issue of excessive force in the context of the wrongful search and seizure claims." (Pl.'s Obj. 1.) Second, he objects "to the [R&R]'s conclusion that he has not pled sufficient facts to make out a *Monell* claim against Defendants Chesterfield County and Colonel Dupuis in Count IV." (Pl.'s Obj. 1.) In the alternative, Howell requests

"leave to amend his Complaint to include the additional facts referred to in his Opposition to the Motion to Dismiss and cited by the Court in Footnote 3 of the [R&R],"[6] facts that Howell contends could sustain a *Monell* claim against the Colonel Dupuis and the County. (Pl.'s Obj. 2.)

### 3. Defendants' Response to Howell's Objections

Defendants urge the Court to overrule Howell's objections. They state that "[t]he Magistrate Judge correctly concluded [that Howell] has not sufficiently alleged an excessive force claim in the Amended Complaint," and that "[t]he Magistrate Judge correctly found that the Amended Complaint provides no factual support for a *Monell* claim against the County or Colonel Dupuis and therefore, appropriately recommended dismissal of the *Monell* claims." (Defs.' Resp. 1–2.) Defendants also attack Howell's request for leave to amend as "procedurally improper" and further argue that "the requested amendment would be futile." (Defs.' Resp. 2.)

## IV. The Court Overrules the Parties' Objections and Adopts in Full the R&R

The Court has conducted a *de novo* review of the R&R and the parties' objections. The Court, in its independent judgment, adopts the findings and rationale of the R&R. To the extent that the parties advance new arguments in their objections to the R&R, the Court addresses those below.

---

[6] Footnote three of the R&R states, in part:

> Plaintiff also attempts to provide *post-hoc* support for his *Monell* claim in his Brief in Opposition to the Motion to Dismiss, wherein he cites to "several news reports" that support his theory of unconstitutional policy and inadequate training and supervision. The Court does not consider these arguments because its analysis at the Rule 12(b)(6) stage in this case is limed to consideration of facts properly alleged within the four corners of the Amended Complaint.

(R&R 27 n.3 (citation omitted).)

### A. The Court Overrules Defendants' Objections

#### 1. Defendants' Arguments Based on *United States v. Ramirez* and *United States v. Lattimore* Fail to Persuade

Defendants argue that *United States v. Ramirez*, 29 F. App'x 111 (4th Cir. 2002), undermines the findings in the R&R that the search and seizure were unreasonable. Defendants' attempt to suggest that *Ramirez* controls does not persuade. The circumstances surrounding Howell's search, seizure, and arrest differ so materially from those facing Ramirez that the Court cannot adopt Defendants' argument.

In *Ramirez*, a police officer pulled Ramirez over for "drift[ing] onto the shoulder of the road." *Id.* at 112. Thus, the officer began the interaction after seeing a traffic violation. Ramirez subsequently consented to the search of his tractor trailer. *Id.* The search proceeded "in three stages," and included a search of both the cabin and the load of the tractor trailer. *Id.* at 114. Although the tractor trailer contained crates that required "dismantl[ing]" and were "extremely hard to open," the search "proceeded expeditiously" and lasted only twenty-five minutes. *Id.* at 113–14 (citations omitted). During the traffic stop and search, Ramirez appeared nervous, provided information that conflicted with statements of his passenger, and changed his story during the course of questioning. *Id.* at 113. The *Ramirez* court found, under the facts of that case, that the search was not objectively unreasonable.

The search of Howell's car, as alleged in his Amended Complaint, differs dramatically and in important ways. Although Howell consented to a search of his car when Officer Moore initially asked, Howell had committed no traffic offense, did not appear nervous, provided no conflicting information, and maintained throughout the encounter that he "had nothing to hide." (*See* Am. Compl. ¶¶ 16–23.) Before Officer Moore asked to search Howell's car, he confirmed that Howell was properly licensed and had no outstanding arrest warrants. Officer Moore's

initial search—like his check of Howell's record—revealed no illegal conduct. Still, two additional searches commenced while Howell was detained for close to an hour—more than twice as long as the search took in *Ramirez*.

In its analysis, the *Ramirez* court considered the lack of "any evidence that [the defendant] objected at any point during the search" to support a finding that the scope of the search was reasonable. *Id.* at 114. The facts in the case at bar, however, describe an entirely different milieu under which Howell would have had to object. Here, the Defendant Officers had "demanded [that Howell] take a seat on the ground" and "proceeded to interrogate him" while the second and third searches occurred.[7] (Am. Compl. ¶¶ 18, 21.) Between the second and third search, an "abrasive and very physically imposing officer"—one of the six officers at the scene—told Howell that a "powdery white substance" the officer had found in Howell's car "was an illegal drug," adding "'[y]ou can do this the easy way and tell us whether it's meth or coke, or we can just run it through the lab.'" (*Id.* ¶¶ 19–20.) At this stage, the record lacks any reference to charges involving powdered narcotics, and, drawing inferences in Howell's favor, this comment likely could not have constituted anything other than intimidation.

Howell contends that he did not consent to the third search, but did not object because his "will was 'overborne and his capacity for self-determination [was] critically impaired.'" (*Id.* ¶ 21.) Howell also states that because all six officers were Caucasian and he was African-American, he felt "distressed and as if he were being targeted because of his race." (*Id.* ¶ 17.)

---

[7] Defendant Officers searched Howell's vehicle a total of three times over the course of approximately one hour. It was not until the third search that the officers found Howell's prescription pills and, believing them to be contraband—which, as alleged, they were not—arrested him.

Given the important factual differences between *Ramirez* and this case, *Ramirez* does not compel a finding that the searches of Howell's car and his corresponding detention were reasonable.

Defendants also contend that *United States v. Lattimore*, 87 F.3d 647 (4th Cir. 1996), compels a finding that the search and seizure were not unreasonable. Defendants' arguments based on *Lattimore* similarly founder.

In *Lattimore*, the United States Court of Appeals for the Fourth Circuit upheld as objectively reasonable a state trooper's search of Lattimore's vehicle based on oral consent during a traffic stop for speeding. 87 F.3d at 651. First, the trooper in *Lattimore* observed a traffic offense. *Id.* During the stop and search, the Trooper "invited Lattimore to accompany him to his patrol vehicle" while the trooper wrote up the citation. *Id.* at 649. The two then "engaged in a casual discussion about high school football." *Id.* The stop and subsequent search occurred on a "well-traveled highway during the middle of the afternoon" and Lattimore "appeared to be quite relaxed throughout [the encounter]." *Id.* at 651. Further, only one trooper was on the scene and the trooper searched Lattimore's vehicle just once. *Id.*

Howell's circumstances differ substantially. Again, Howell had committed no violation, traffic or otherwise. He was alone in a parking lot late at night. Six police officers eventually arrived and they conducted three searches of his vehicle during an hour-long interaction. Howell was told to sit down, questioned sharply, and accused of possessing illegal drugs. As is true with *Ramirez*, the significant factual differences between the events and conduct during the search in *Lattimore* and the search of Howell's car prevents this Court from accepting Defendants' argument that *Lattimore* controls here.

## 2. Defendants' Qualified Immunity Argument Fails

In their Objection, Defendants reiterate their assertion of entitlement to qualified immunity for Howell's Fourth Amendment Claims and his two claims of Malicious Prosecution. The Court is not able, at this early stage, to find that qualified immunity protects the Defendants here.

Neither party challenges the legality of the initial encounter between Officer Moore and Howell. Similarly, no one disputes that—unlike nearly every case cited in briefing—no officers saw Howell commit any violation, traffic-related or otherwise, before the encounter began. No party contends that any reports of suspicious activity alerted the police to Howell's presence.

At odds with investigative norms, this record shows that Officer Moore had entirely dispelled any suspicion he reasonably could have had regarding criminal activity before any search began and before any other officers arrived on the scene. During this initial encounter, Officer Moore confirmed that Howell was properly licensed and had no outstanding warrants. Nevertheless, Officer Moore sought consent to search Howell's vehicle, which he received. Officer Moore searched the car and found nothing incriminating, yet the Defendant Officers conducted two more searches, taking almost an hour to do so. It was not until the *third* search that officers found Howell's prescription pills and, believing them to be contraband—which, as alleged, they were not—arrested him. Thus, the Magistrate Judge properly found "that [Howell] has sufficiently alleged facts that support a finding that the objectively reasonable scope of his consent only extended to the first search of his car and that the Defendant Officers did not have consent to conduct a second—let alone third—search after [Howell's] ID-check and the first search uncovered nothing untoward." (R&R 9.)

Moreover, although Howell consented to a search of his car, the Court cannot find that it amounted to consent with the same scope as that in *Lattimore* or *Ramirez*. Howell was alone, it was late at night, and he was surrounded by six police officers. Howell suggests that as a young African-American facing accusatory Caucasian officers, his will to revoke consent became overborne. The encounter was not amicable. The Defendant Officers "demanded" that Howell sit on the ground, interrogated him, and accused him of possession of illegal drugs. (Am. Compl. ¶ 18.)

To the extent Defendants ask this Court to find otherwise, their reliance on legal principles without any clarification of this scant record falls short. The Court recognizes that "qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). However, the Defendant Officers' conduct here greatly exceeded the scope of a normal search and seizure, consensual or not. It remains possible that Defendants had a valid basis to proceed in this manner, but the record currently provides no persuasive explanation.

For the foregoing reasons and for the reasons stated in the R&R, which the Court fully adopts, the Court will not grant qualified immunity on such a sparse record and in a case involving an alleged violation of such an extreme nature.

### 3. Defendants' Argument Based on the "Automobile Exception" to the Fourth Amendment's Warrant Requirement Is Unavailing

Defendants also raise in their Objection, for the first time, an alternative argument in support of their position that the search of Howell's car did not violate the Fourth Amendment.[8]

---

[8] A party objecting to an R&R is "permitted to raise before the court any argument as to that issue that it could have raised before the magistrate." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992) (footnote omitted). While the Court will address it here, it reminds

Specifically, Defendants argue that the "Defendant Officers had probable cause to conduct a warrantless search of the vehicle pursuant to the 'automobile exception' to the Fourth Amendment's warrant requirement." (Defs.' Obj. 12.) This argument founders.

The well-established "automobile exception" to the Fourth Amendment's warrant requirement allows police to conduct a "warrantless search of an automobile, based upon probable cause to believe that the vehicle contained evidence of a crime." *California v. Acevedo*, 500 U.S. 565, 569 (1991) (citing *Carroll v. United States*, 267 U.S. 132, 158–59 (1925)). Defendants argue that even if the three searches of Howell's car exceeded the scope of Howell's consent to search his vehicle, the searches were nevertheless lawful because Officer Moore had "reasonable ground for belief that [Howell] was guilty of driving while intoxicated in violation of Va. Code § 18.2-266[9] and probable cause to believe that evidence of the crime, Benadryl, would be located in the vehicle." (Defs.' Obj. 13.)

The facts alleged in Howell's Amended Complaint simply do not support this argument.[10] Howell had pulled into a parking lot, legally parked, and "began to rest" when Officer Moore approached his car. (Am. Compl. ¶¶ 13–14.) While Howell concedes in his

---

the parties that in the interest of judicial economy, they should present all relevant issues to the Magistrate Judge for consideration.

[9] Section 18.2-266 states, in relevant part:

> It shall be unlawful for any person to drive or operate any motor vehicle . . . while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his [or her] ability to drive or operate any motor vehicle . . . .

Va. Code § 18.2-266.

[10] The Court will assume the well-pleaded factual allegations in the Amended Complaint to be true and will view them in the light most favorable to the Plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Amended Complaint that he had recently taken Benadryl for his allergies, the record contains no facts suggesting that Officer Moore knew or had reason to know about Benadryl or any other substance. Officer Moore cannot argue facts not properly before the Court. Officer Moore had not seen Howell driving, and nothing suggests a basis to presume intoxication other than that Howell was asleep at 11:30 p.m. in his car. On these facts—in the absence of signs of intoxication (which does not exist in the record)—nothing suggests anything other than that Howell had naturally gotten sleepy, which, of course, is not a crime. Officer Moore's first search did not dispel that innocent explanation. Therefore, based on the facts currently before the Court, Officer Moore lacked the probable cause required for the application of the "automobile exception" to the Fourth Amendment's warrant requirement. *See Acevedo*, 500 U.S. at 569 (1991) (citing *Carroll*, 267 U.S. at 158–59).

### 4. Defendants' Contention that Howell's Arrest was Lawful Fails

On the issue of unlawful arrest, Defendants advance arguments in their Objection under two Fourth Circuit cases, *Goines v. Valley Community Services Board*, 822 F.3d 159 (4th Cir. 2016), and *Brown v. Wiita*, 7 Fed. App'x 275 (4th Cir. 2001). The Court finds these cases to be distinguishable and, thus, unpersuasive.

In *Goines*, a case involving an emergency mental health detention, the Fourth Circuit concluded that a mental health examiner's failure to call Goines's primary care physician to corroborate Goines's claim that he had a "shrunken cerebellum" and was not mentally ill did not negate probable cause. *Goines*, 822 F.3d at 172 and n.4. *Goines* differs substantially from the case at bar. First, the additional evidence in *Goines* was not "exculpatory" in the same way a valid medical prescription would have been here. A prescription could have entirely negated the illegal nature of the conduct alleged against Howell—the illegality of possessing the narcotics.

The information Goines claimed the medical staff should have acquired before committing him, in contrast, could only have provided context for his unusual behavior, but could not have negated entirely the possibility that Goines posed a danger to himself or others. *See id.* at 172–73. Second, a call to a primary care physician to corroborate an earlier diagnosis differs materially from what Howell sought here—a simple call to a twenty-four-hour pharmacy, with Howell there, to verify the existence of a prescription. The exculpatory evidence Howell requested that Officer Moore find was more "readily available" than the exculpatory evidence offered in *Goines*, *see Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) ("[A]n officer may not disregard readily available exculpatory evidence of which he is aware . . . ."), and substantially more exculpatory.

*Wiita*, on the other hand, involved a § 1983 case brought by a man mistakenly arrested for cocaine distribution. The court in *Wiita* found that the arresting officer's failure to take several further investigatory steps that would have avoided the misidentification—including waiting for a photograph on order from the DMV and searching through the phonebook—did not negate probable cause. In contrast, Howell provided the Defendant Officers with a single, feasible, and quick step that could have eliminated the probable cause for the crime Officer Moore charged against Howell. The evidence Howell offered was much more readily available than the additional evidence in *Wiita*.

### 5. Defendants' Citation to Non-Binding Case Law Founders

Defendants cite to *Yates v. Commonwealth*, No. 1289-99-4, 2000 WL 343458 (Va. Ct. App. Apr. 4, 2000), *Grinton v. Commonwealth*, 419 S.E.2d 860 (Va. Ct. App. 1992), and *United States v. Meza-Gonzalez*, 394 F.3d 587 (8th Cir. 2005), for Defendants' contention that the search was reasonable. These cases fail to persuade the Court. Not only do those cases

constitute non-binding persuasive authority, but they also involve substantially different facts rendering them distinguishable from the case at hand.[11] Defendants' reliance on *United States v. Williams*, No. 2:14-cr-20, 2015 WL 5602617 (W.D. Pa. Sept. 23, 2015), *United States v. Siwek*, 453 F.3d 1079 (8th Cir. 2006), *United States v. Rosborough*, 366 F.3d 1145 (10th Cir. 2004), and *United States v. Alcantar*, 271 F.3d 731 (8th Cir. 2001), for the proposition that the seizure was reasonable, similarly fails. Not one of these cases involve facts that make them anything but distinguishable from the matter at bar.

### B.  The Court Overrules Howell's Objections

#### 1.  Howell's Excessive Force Objection Fails

Howell objects to "the [R&R's] conclusions regarding the claim of excessive force in Count I to the extent the Report could be read to disallow Plaintiff from raising the issue of excessive force in the context of the wrongful search and seizure claims." (Pl.'s Obj. 1.) To the extent Howell objects to any finding of the R&R, the Court overrules it. This, of course, does not strike any of the facts alleged in Howell's Amended Complaint, nor does it prohibit the Court from considering those facts as they relate to Howell's surviving claims.

To the extent that Howell has stated a cognizable objection, to the R&R, the Court overrules it.

#### 2.  The Court Declines to Consider Howell's Request for Leave to Amend His Complaint Again as no Motion is Before the Court

In his Objection to the R&R, Howell seeks leave to amend his Complaint to plead more facts to support his *Monell* claim. Howell asks for leave to amend his Amended Complaint "to

---

[11] The standard for determining the scope of consent for the purposes of the Fourth Amendment is "objective reasonableness," which requires the court to consider the "totality of the circumstances." *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996). This inquiry by its nature is highly fact-specific, making factual differences between cases significant to the Court's analysis.

16

include the additional facts referred to in his Opposition to the Motion to Dismiss and cited by the [R&R] in Footnote 3 of the Report." (Pl.s' Obj. 2.) Footnote three of the R&R states, in part:

> Plaintiff also attempts to provide *post-hoc* support for his *Monell* claim in his Brief in Opposition to the Motion to Dismiss, wherein he cites to "several news reports" that support his theory of unconstitutional policy and inadequate training and supervision. The Court does not consider these arguments because its analysis at the Rule 12(b)(6) stage in this case is limited to consideration of facts properly alleged within the four corners of the Amended Complaint.

(R&R 27 n.3 (citation omitted).)

The Defendants oppose Howell's request. They contend that "[t]he Magistrate Judge correctly found that the Amended Complaint provides no factual support for a *Monell* claim against the County or Colonel Dupuis and therefore, appropriately recommended dismissal of the *Monell* claims." (Defs.' Resp. 2.) The Defendants also attack Howell's request for leave to amend as "procedurally improper" and further argue that "the requested amendment would be futile." (*Id.*)

The Court will not entertain the motion to amend his Complaint that Howell embeds in his Objection. Should Howell wish to amend his Complaint, he shall seek leave to do so by proper motion with a memorandum of support. *See* E.D. Va. Loc. R. 7. If Defendants then wish to oppose, they will have the opportunity to do so under the Federal Civil and Local Rules. The Court dismisses Howell's *Monell* claim without prejudice, allowing Howell to file an appropriate motion with the Court should he still wish to amend his Amended Complaint.

## V. Conclusion

Thus, finding no error in the R&R, the Court:

1) ADOPTS the findings and recommendations set forth in the R&R as to all sections except § III.D, (ECF No. 13);

2) ADOPTS the findings and recommendations set forth in the R&R as to § III.D as modified by this Memorandum Order;

3) OVERRULES Defendants' objection asking the Court to dismiss Count I, subpart (i), (ii), and (iv), Count III, and Count V of the Amended Complaint, (ECF No. 14);

4) GRANTS IN PART the Defendants' Motion to Dismiss, (ECF No. 5);

5) DISMISSES Count II of the Amended Complaint;

6) DISMISSES WITHOUT PREJUDICE Count IV of the Amended Complaint; and,

7) DISMISSES WITHOUT PREJUDICE the County and Colonel Dupuis as defendants.

Defendants SHALL file an answer to the remaining counts in Howell's Amended Complaint, in accordance with the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure for the Eastern District of Virginia, no later than October 13, 2017.

Let the Clerk send a copy of this Order to all counsel of record.

It is so ORDERED.

/s/
M. Hannah Lauck
United States District Judge

Date: 9-30-17
Richmond, Virginia